IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES FLOOR COVERING CO., INC. | : | |
| | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | NO. 22-123 |
| **TUTOR PERINI BUILDING CORPORATION** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                          December 12, 2022

Plaintiff James Floor Covering Co., Inc. has sued Defendant Tutor Perini Building Corporation for a breach of contract arising out of work performed by Plaintiff on a construction project in Philadelphia, Pennsylvania. Defendant has moved to dismiss the Complaint in its entirety. For the following reasons, I will grant the Motion.

**I.     FACTUAL BACKGROUND**

    **A.     Facts in the Complaint**

The following facts are set forth in the Complaint:[1]

The parties were both involved with a construction project to build the W/Element Hotel at 1441 Chestnut Street, Philadelphia, Pennsylvania (the "Project"). Defendant entered into a written agreement with the Project's owner, Chestlen Development, L.P. ("Chestlen" or "Owner"), in which

---

[1]     In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Defendant agreed to serve as the Project's general contractor and provide all labor and materials necessary for the construction of the Project. (Compl. ¶¶ 6–7.)

On July 5, 2016, Defendant entered into a written subcontract with Plaintiff ("Subcontract Agreement") whereby Plaintiff agreed to furnish all labor, materials, tools, equipment, and insurance necessary to install flooring, stone, countertops, and tile at the Project. (Id. ¶ 8.) The Subcontract Agreement provides:

> [Defendant] agrees to pay [Plaintiff] for his work from funds [Defendant] receives from Owner under the General Contract the sum of $222,825 . . . . Unless otherwise required by the General Contract, partial payment will be made to [Plaintiff] as the work progresses, on or before fourteen (14) days after [Defendant's] receipt of payment from the Owner for [Plaintiff's] work completed during the preceding estimate period, pursuant to estimates approves by the Owner. In making such partial estimates, there shall be retained 10.00% on the estimated amount until final completion and acceptance of all work covered by the General Contract and after final payment has been received by [Defendant] for [Plaintiff's] scope of work.

(Id. ¶ 9.)

In the event Defendant does not receive payment from the Owner for Plaintiff's work, the Subcontract Agreement states:

> If [Defendant] does not receive full and final payment from Owner for work performed by [Plaintiff] within the time required by the General Contract or the law then [Defendant's] obligation to make payment including any Subcontract retention shall not arise until two (2) months after [Defendant] has exhausted its efforts to collect payment from Owner in proceedings described in paragraph 2E herein and in this event, [Plaintiff]'s sole remedy and recourse against [Defendant] shall be to recover its pro-rata share of what [Defendant] has been able to collect from the Owner as set forth in paragraph 2E herein.

(Id. ¶ 10.)

Finally, the Subcontract contains the following clause regarding disputes:

> All claims of Subcontractor [Plaintiff] arising out of acts or omissions by Owner [Chestlen] shall be presented to Owner by Contractor [Defendant] on behalf of Subcontractor . . . . All other claims and disputes between the parties shall be decided by the appropriate Pennsylvania State Court where venue is proper under the applicable law. Subcontractor shall not be entitled to recover damages from Contractor as a result of any act, omission or event without proof that it gave Contractor immediate written notice that it was being or would be damaged by such act, omission or event, but in no event later than 10 days after the first occurrence of the act, omission or event, or at such shorter time as may be required by the General Contract Documents.

(Id.) Defendant posits that where, as here, a subcontractor—such as Plaintiff—has disputes directly with Defendant, as General Contractor, those disputes constitute "other claims and disputes." In turn, under the express language § 2.E, Defendant contends that such claims must be brought in the "appropriate Pennsylvania State Court."

Plaintiff and Defendant also executed ten (10) change orders ("Change Orders") altering and/or adding to Plaintiff's scope of work, costs, and/or other terms of the Subcontract Agreement throughout its work on the Project. (Id. ¶ 11.)

Plaintiff claims that it duly and fully performed its scope of work on the Project as set forth in the Subcontract Agreement and Change Orders as requested by Defendant. Accordingly, it asserts that it is owed $344,862.01. Plaintiff notified Chestlen and Defendant of non-payment on the Project but has yet to receive any payment. (Id. ¶¶ 12–15.)

On January 11, 2022, Plaintiff filed a federal complaint setting forth two claims. First, Plaintiff alleges that Defendant breached its Subcontract Agreement with Plaintiff by failing to pay Plaintiff the full amount due and owing on the Project. Second, Plaintiff asserts that Defendant violated the Pennsylvania Contract and Subcontractor Payment Act ("CASPA"), 73 P.S. § 501, et seq.

### B.     Parallel State Court Proceedings

The following are facts are taken from court docket entries in related cases:[2]

The Project is the subject of multiple other lawsuits, all of which are pending in the Philadelphia Court of Common Pleas, and eighteen of which have been consolidated into a single action, in the state court's Commerce Program, under the caption, Chestlen Development LP v. Tutor Perini Building Corp., No. Jan. Term 2021, No. 645. (Def.'s Mot., Ex. 5.)

Among these cases is a suit brought by Defendant against Chestlen on December 8, 2020, seeking money owed to Defendant and its trade contractors, including Plaintiff, "for the construction costs, labor, materials, equipment, and other services that were supplied to [Chestlen] to construct [the Project]." (Def.'s Ex. 4 ¶ 1.) Defendant's state lawsuit contends that Chestlen has not paid it since October 16, 2020, and that payment was for work dating back to May 2020. (Id. ¶ 21.) Defendant seeks compensation by Chestlen for the work its trade contractors performed on the Project and to collect on all unpaid invoices, extra work, and other contract costs. (Id. ¶ 3.) Chestlen denied Defendant's allegations and contested liability. Additionally, Chestlen filed its own state court complaint against Defendant, on January 11, 2022, claiming entitlement to more than $30 million in liquidated damages arising out of alleged delays, defective work, and mismanagement by Defendant and its contractors. (Def.'s Ex. 7.)

Aside from this case, numerous other trade contractors have filed suit in the Philadelphia Court of Common Pleas, either in the form of Mechanic's Lien claims or other actions seeking

---

[2]     Federal Rule of Evidence 201(b) permits a district court to take judicial notice of facts that are "not subject to reasonable dispute" in that they are either (1) "generally known within the territorial jurisdiction of the trial court" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In the United States Court of Appeals for the Third Circuit, courts may take judicial notice of docket entries filed in separate litigation proceedings. FCS Capital LLC v. Thomas, 579 F. Supp. 3d 635, 647 (E.D. Pa. 2022).

payment for work they performed on the Project. (Def.'s Ex. 5 (listing related case numbers). On July 1, 2021—six months before filing this case—Plaintiff filed a Mechanic's Lien claim against Chestlen in which it seeks to recover the same amount sought in this case $344,862.01. (Def.'s Ex. 1 ¶ 7; Def.'s Ex. 2, ¶ 10.) Chestlen denied Plaintiff's allegations, claiming, in part, that Plaintiff's work was "incomplete and deficient" and that Chestlen owes no further payment for work performed on the Project. (Def.'s Ex. 3.)

On December 20, 2021, the state court consolidated Plaintiff's Mechanic's Lien as one of the eighteen Project-related cases in the civil action captioned <u>Chestlen Development LP v. Tutor Perini Building Corp.</u>, No. 210100645. (Def.'s Ex. 9.) The state court has entered a Case Management Order setting a deadline for the close of fact discovery as December 5, 2022, and scheduling the case for trial by July 3, 2023. (Def.'s Ex. 10.)

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. <u>Id.</u>

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

## III.   DISCUSSION

Defendant seeks dismissal of Plaintiff's Complaint on three grounds. First, it argues that the unequivocal forum selection clause in the Subcontractor Agreement renders venue improper in federal court. Second, Defendant asserts that Plaintiff has failed to allege at least two conditions precedent to suit. Finally, Defendant contends that I should abstain from considering this case under the abstention doctrine set forth in Colorado River Water Conservation District v. United States, 426 U.S. 800 (1976). As I find merit to Defendant's threshold argument regarding the Subcontract Agreement's forum selection clause, I focus solely on that argument and will dismiss the Complaint for improper venue.[3]

---

[3]   Although, as a general rule, motions to dismiss for improper venue are entertained under Fed. R. Civ. P. 12(b)(3), the Third Circuit has held that dismissal under Rule 12(b)(6) is proper where a forum selection clause designates another court as the exclusive venue for litigation. See Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298–99 (3d Cir. 2001); Health Robotics, LLC v. Bennett, 09-cv-627, 2009 WL 1708067, at *2 (E.D. Pa. 2009).

There are two basic types of a forum selection clauses. "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause . . . dictates an exclusive forum for litigation under the contract." Dawes v. Publish Am. LLP, 563 F. App'x 117, 118 (3d Cir. 2014) (internal quotation marks omitted). Clauses that only specify a forum are treated as permissive. To be regarded as mandatory, a clause must include "some further language indicating the parties' intent to make jurisdiction exclusive." Union Steel Am. Co. v. M/V Sanko Spruce, 14 F. Supp. 2d 682, 687 (D.N.J. 2008) (quotation marks and citation omitted).

When a forum selection clause is invoked, the first question is whether the clause is enforceable. This is a question governed by federal law. Collins v. Mary Kay, Inc., 874 F.3d 176, 181 (3d Cir. 2017). "Forum selection clauses are 'prima facie valid' and should be enforced unless shown to be 'unreasonable' under the circumstances." SKF USA, Inc. v. Okkerse, 992 F. Supp. 2d 432, 443 (E.D. Pa. 2014) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9–10 (1972)). The party opposing a forum selection clause bears "the heavy burden of proving that the clause should not be enforced," a burden which requires more than a showing of inconvenience or additional expense. Id. at 444.

The second question is whether the dispute falls within the clause's scope. "A scope-based challenge to the applicability of a forum-selection clause presents a quintessential question of contract interpretation." Reading Health Sys. v. Bear Stearns & Co., 900 F.3d 87, 98 (3d Cir. 2018). The law governing the interpretation of contracts in Pennsylvania is well settled. "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contract parties . . . The whole instrument must be taken together in arriving at contractual intent." Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (quoting Murphy v. Duquesne Univ., 777 A.2d 418, 429–30 (Pa. 2001)). "When a written contract is clear and

unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (quoting East Crossroads Ctr., Inc v. Mellon-Stuart Co., 205 A.2d 865, 866 (Pa. 1965)); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001).  A contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.  St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991).  The language of the contract should not be "tortured" to create ambiguities where none exist.  Id. (quotation omitted).

Defendant premises its argument on § 2.E of the Subcontract Agreement, which states, in pertinent part:

> All claims of Subcontractor [Plaintiff] arising out of acts or omissions by Owner [Chestlen] shall be presented to Owner by Contractor [Defendant] on behalf of Subcontractor . . . . **All other claims and disputes between the parties shall be decided** by the appropriate Pennsylvania State Court where venue is proper under the applicable law.  Subcontractor shall not be entitled to recover damages from Contractor as a result of any act, omission or event without proof that it gave Contractor immediate written notice that it was being or would be damaged by such act, omission or event, but in no event later than 10 days after the first occurrence of the act, omission or event, or at such shorter time as may be required by the General Contract Documents.

(Compl., Ex. A § 2.E (emphasis added).)  Defendant posits that where, as here, a subcontractor—such as Plaintiff—has disputes directly with Defendant, as General Contractor, those disputes constitute "other claims and disputes."  In turn, under the express language § 2.E, Defendant contends that such claims must be brought in the "appropriate Pennsylvania State Court."

Plaintiff counters with three arguments.  First, it posits that § 2.E is clearly limited to the context of claims that Plaintiff may accrue on the Project that arise from the "acts or omissions of Owner."  As Plaintiff has no contractual privity with the Owner, Plaintiff argues that § 2.E simply sets forth procedures with which Plaintiff is contractually obligated to comply in order to prosecute

such claims. According to Plaintiff, to construe § 2.E as the forum selection clause governing Plaintiff's claims against Defendant would ignore the limited application of § 2.E to disputes between Plaintiff and Owner.

Second, Plaintiff cites to § 12 of the Subcontract Agreement as the controlling and applicable forum selection clause. This provision states:

> The parties agree that this Subcontract was entered into in the Commonwealth of Pennsylvania. This Subcontract shall be construed and enforced with and under the laws of the Commonwealth of Pennsylvania and, should any provisions hereof be found invalid by a Court or Courts of competent jurisdiction, the same shall not invalidate the remaining provisions of this Subcontract. Venue shall lie in Philadelphia County, Pennsylvania. The parties expressly agree to submit to the service of process in and to the jurisdiction of the Courts of the State of Pennsylvania in connection with any dispute, claim or controversy arising under the Subcontract.

(Id. ¶ 12.) According to Plaintiff, § 12 is a permissive forum clause that permits the parties to file either in state or federal court within Philadelphia County, and that, unlike § 2.E, this section is not limited to any particular types of disputes. Plaintiff presses that this interpretation of § 12 is consistent with the forum selection language within the General Conditions of the Construction Management Agreement between Chestlen and Defendant—an agreement incorporated by reference into the Subcontract Agreement—which provides that "exclusive jurisdiction and proper venue shall be of the state courts of the State and the Federal District Court for the Eastern District of Pennsylvania." (Pl.'s Resp., Ex. A ¶ 14.1.1.)

Plaintiff's last argument contends that even if § 2.E is interpreted to apply to claims other than owner-related disputes, then this issue still cannot be resolved on a motion to dismiss because the Subcontract Agreement is ambiguous and not subject to interpretation as a matter of law. Plaintiff reasons that the Subcontract contains three different forum selection clauses: (1) § 2.E, which Defendant interprets as requiring all claims to be brought in Pennsylvania state court; (2) §

12 of the Subcontract allowing for suit in state court; and (3) § 14.1.1 of Construction Management Agreement, incorporated by reference into the Subcontract Agreement, allowing for suit in state of federal court. As there is an express conflict in the plain meaning of the terms, Plaintiff presses that the ambiguity cannot be reconciled by the Court.

I find no merit to Plaintiff's arguments as this dispute is easily resolved through plain interpretation of the unambiguous contract language. Turning first to § 2.E of the Subcontract Agreement between Plaintiff and Defendant, the first sentence of the provision states that "[a]ll claims of [Plaintiff] arising out of acts or omissions by [Chestlen] shall be presented to [Chestlen] by [Defendant] on behalf of [Plaintiff]." (Subcontract Agreement § 2.E.) By its unambiguous terms, this particular sentence refers solely to Plaintiff's claims that involve Chestlen's acts or omissions and provides Plaintiff with an avenue to resolve disputes against an entity with which it has no contractual privity. The provision subsequently goes on to state that "[a]ll other claims and disputes between the parties [Plaintiff and Defendant] shall be decided by the appropriate Pennsylvania State Court where venue is proper under the applicable law." (Id.) The language is mandatory and clearly applies to Plaintiff's current claims against Defendant. To accept Plaintiff's interpretation and read all of § 2.E as referring solely to disputes between Plaintiff and Chestlen would ignore the phrase "all other claims" and improperly render it superfluous. See Rathblott v. PeopleStrategy, Inc., 685 F. App'x 107, 109 (3d Cir. 2017) ("In determining whether a contract is ambiguous or not, judges 'take[] care not to render other portions of a provision or contract superfluous when construing contractual language.'") (quotations omitted).

Moreover, I find that § 2.E can consistently be read with § 12 of the Subcontract Agreement. See Little v. MGIC Indem. Corp., 836 F.2d 789, 793 (3d Cir. 1987) (holding that, when possible, "a court should interpret [a contract] so as to avoid ambiguities and give effect to all of its provisions."). As noted above, § 2.E provides for disputes between Plaintiff and Defendant to be

10

decided by Pennsylvania state courts "where venue is proper under the applicable law." Section 12 then explicitly dictates that "[v]enue shall lie in Philadelphia County, Pennsylvania." (Subcontract Agreement § 12.) Construing these provisions together, the Subcontract dictates that Plaintiff's disputes with Defendant, other than those that arise out of Chestlen's acts or omissions, must be brought in Pennsylvania state court, with venue explicitly designated in Philadelphia County. The remainder of section 12 then confirms that the parties intended to select Pennsylvania state courts as the mandatory forum by providing that "[t]he parties expressly agree to submit to the service of process in and to the jurisdiction of the Courts of the State of Pennsylvania in connection with any dispute, claim or controversy arising under the Subcontract." (Id.) Adopting Plaintiff's interpretation of section 12 as permitting suits in federal court would render this last sentence a nullity.

Finally, Plaintiff's reference to the forum selection clause in the General Contract between Chestlen and Defendant does not impact my interpretation of the Subcontract. As noted above, the General Contract's forum selection clause provides for jurisdiction and venue in state or federal courts in the Eastern District of Pennsylvania. (Pl.'s Resp., Ex. A § 14.1.1.) Plaintiff, however, is not a signatory to the General Contract and, thus, is not expressly bound by its provisions. Although Plaintiff presses that the Subcontract Agreement incorporates the General Contract as part of the agreement, Plaintiff disregards the Subcontract Agreement's explicit provision that "[i]f there is a conflict between the terms of the General Contract and the terms of this Subcontract . . . this Subcontract prevails." (Compl., Ex. 1 § 1.) Accordingly, to the extent the forum selection clauses of the General Contract and the Subcontract Agreement are different, the Subcontract Agreement's forum selection clause—set forth in § 2.E—controls the suit between the parties here.

In short, a legal interpretation of the Subcontract Agreement clearly indicates that the parties agreed to litigate any disputes between them—other than those "arising out of acts or omissions by

11

[Chestlen]"—in the Pennsylvania state courts in Philadelphia County. Nothing in the Subcontract Agreement or the General Contract, as incorporated into the Subcontract Agreement, undermines that interpretation. As the claims raised by Plaintiff in the Complaint allege Defendant's own breach of contract and violation of the Pennsylvania Contract and Subcontractor Payment Act—and do not rest on "acts or omissions" by Chestlen—such claims are subject to the forum selection clause. Accordingly, venue is not proper in federal court, and Defendant's Motion to Dismiss must be granted.

      An appropriate Order follows.